UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-30102-GAO

SHAUNA MARIE CLEMENT,
Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration,
Defendant.

OPINION AND ORDER
September 25, 2012

O'TOOLE, D.J.

**I.     Introduction**

The plaintiff, Shauna Marie Clement ("Clement"), appeals the denial of her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits by the Commissioner of Social Security ("Commissioner"). Clement applied for SSDI benefits and SSI benefits on February 10, 2009, claiming she had become disabled on August 24, 2008. (Administrative Tr. at 127 [hereinafter R.].)[1] Clement's application was denied[2] at the initial level of review on May 13, 2009. (Id. at 46.) On May 26, 2009, Clement filed a request for reconsideration (Id. at 50), claiming that the Social Security Administration "did not take into account the full extent of [her] disability." (Id.)

---

[1] The administrative record has been filed electronically (dkt. no. 6). In its original paper form, its pages are numbered in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

[2] "We realize that your condition prevents you from doing your past job, but it does not prevent you from doing other work….You are able to perform simple jobs without complex instructions, and ones that do not involve working closely with others." (Id. at 46.)

On October 21, 2009, following a reconsideration of the evidence in Clement's case, Social Security Administration Regional Commissioner Manuel J. Vaz ("Regional Commissioner Vaz") notified Clement that the initial denial of her application was affirmed. (Id. at 53-58.) Clement timely filed a written request for a hearing before an Administrative Law Judge ("ALJ") on November 4, 2009. (Id. at 59.)

The hearing, before ALJ Michael P. Breton ("ALJ Breton"), was held on August 19, 2010. (Id. at 18-41.) Clement was represented by non-attorney F. Bruce Ferin at the hearing. (Id. at 22-41.) Clement provided oral testimony at the hearing. (Id.) On November 17, 2010, ALJ Breton issued a written Decision denying Clement SSDI benefits and SSI benefits because, although Clement could no longer perform her past relevant work due to several severe impairments, there were a number of jobs she could perform. (Id. at 15-16.) As such, ALJ Breton determined that a finding of 'not disabled' was appropriate. (Id. at 16.)[3]

Before the Court is a motion for judgment on the pleadings to reverse (dkt. no. 9), and alternatively a motion for an order to affirm (dkt. no. 13), ALJ Breton's Decision. The Court now affirms ALJ Breton's Decision because there is substantial evidence in the administrative record to support it, and no error of law was made.

## II.     Factual Background

At the time she applied for SSDI benefits and SSI benefits, Clement was thirty-one years old. (Id. at 127.) She attended school through ninth grade and later received a GED. (Id. at 22, 35.) Prior to the alleged onset of her disability on August 24, 2008 she worked as a residential

---

[3] Although ALJ Breton indicated that the Decision Review Board had selected Clement's claim for review (Id. at 4), the Decision Review Board did not complete its review of Clement's claim within 90 days of ALJ Breton's Decision, thus, pursuant to 20 C.F.R. § 405.420(a)(2), ALJ Breton's Decision became the final decision of the Administration on February 28, 2011. (Id. at 1-3.)

care giver, a factory worker, a driver, and a personal care attendant.[4] (Id. at 23, 142.)[5] Clement described her disability as: "[a]nxiety, panic disorder, bipolar, adhd." (Id. at 142.) She claimed that, as a result of her conditions, her ability to work was impaired due to "[c]onstant panic attacks." (Id.) While a significant portion of the hearing before ALJ Breton was dedicated to Clement's physical impairments (Id. at 24-28, 35-36, 39-40), her application for SSDI benefits and SSI benefits had identified only mental health impairments as the cause of her alleged disability. (Id. at 127, 142.)

    A.    <u>Physical Health</u>

On January 2, 2008, Clement was examined by Dr. Joshua T. Yurfest ("Dr. Yurfest"). (Id. at 237.) She stated that she developed "lower back pain" in 2004 and that she developed "upper back pain" in 2006. (Id. at 237.) Clement was diagnosed with a "small-to-moderate size[d] broad-based central disc herniation at L5-S1, with no nerve root impingement" on February 15, 2008. (Id. at 10, 243.) On June 6, 2008, Clement was also diagnosed with sinobronchitis/reactive airway disease. (Id. at 10, 264.) Additionally, Clement suffered multiple nondisplaced mandibular fractures in August 2009, as the result of an assault.[6] (Id. at 300.) However, Clement does not allege, and the record does not reflect, any work-related limitations resulting from her jaw. (Id. at 10.) Finally, Clement has been diagnosed with asthma and uses an inhaler. (Id. at 25-27.)[7]

---

[4] Described as a personal care assistant elsewhere in the record. (Id. at 15.)
[5] Clement most recently worked answering phones for an ambulance company (Id. at 22) but was terminated after approximately six weeks. (Id. at 23.) ALJ Breton concluded that this constituted an unsuccessful work attempt. (Id. at 10.)
[6] Regarding the circumstances of the assault, Clement's testimony at the hearing before ALJ Breton (Id. at 40) was inconsistent with statements attributed to her in relevant contemporaneous medical records. (Id. at 300.)
[7] The record reflects that, despite her asthma, Clement smokes approximately one pack of cigarettes daily. (Id.)

B.   Mental Health

Clement has been diagnosed with affective and anxiety-related disorders. (Id. at 14) While the record is unclear as to when Clement was first diagnosed with an anxiety-related disorder,[8] the earliest medical record is a March 28, 2007[9] psychiatric evaluation administered by Alyce Kaplan, MS, APRN, CS ("Kaplan") at the Brien Center for Mental Health and Substance Abuse Services ("Brien Center"). (Id. at 400-403.) The resultant diagnostic impression was: panic disorder without agoraphobia,[10] asthma, and a Global Assessment of Functioning ("GAF") of 45. (Id. at 402.)[11]

The next entry in Clement's medical record is a psychiatric progress note, authored by Kaplan, dated February 20, 2008. (Id. at 257, 404.) In that psychiatric progress note, Clement's panic attacks are described as "well controlled." (Id.) Although her mood is described as anxious, her thought process is described as logical and coherent. (Id.)

On May 9, 2008, Clement was evaluated by Paul Haley, MD ("Haley"). (Id. at 253-255, 406.) Clement is described as "pleasant and cooperative," though "mildly anxious in terms of mood and affect." (Id. at 254.) Her thoughts are noted to be "organized, logical and goal directed." (Id.) Her concentration is described as "intact," her cognition is "within the normal range," and her insight and judgment "seem reasonable." (Id.). Haley noted that Clement "tends to avoid shopping centers and that generally there are some places she is not able to go…." (Id.

---

[8] The first mental health record indicates that Clement had already been prescribed medication. (Id. at 257, 403.)
[9] Clement's claimed onset of disability is August 24, 2008. (Id. at 127, 142.)
[10] Kaplan noted that Clement "states that she at one time suffered from social anxiety and agoraphobia, but fortunately those symptoms are not present now." (Id.)
[11] Kaplan also noted that Clement was "currently out on bail, awaiting possible jail sentence making it difficult to find gainful employment and a place to live" (Id.)

at 253.) However, Haley also noted that "overall, [Clement] feels she is functioning reasonably well." (Id.) Clement reported that she is "quite busy at this time working and that generally things are going well." (Id. at 254.) Haley diagnosed Clement with panic disorder and mild agoraphobia, asthma, and a GAF of 65.[12] (Id. at 255, 406.)

### C.   The ALJ's Decision

ALJ Breton found Clement to be suffering from multiple severe[13] impairments, both physical and mental. (Id. at 10.) As ALJ Breton noted, however, the record is replete with numerous reports[14] indicating that Clement's thought process was logical and coherent. (Id. at 14.) The impairments prevented Clement from returning to her past relevant work, but ALJ Breton found that there were numerous jobs in sufficient supply in the national economy for which Clement's impairments would not disqualify her. (Id. at 16.) Thus, Clement was not disabled under the Social Security Act. (Id.)

ALJ Breton's opinion tracked the five-step sequential evaluation process, mandated by 20 C.F.R. §§ 404.405(a) and 416.920(a), to determine if Clement was disabled. (R. at 8-17.) Each step is potentially dispositive; if the claimant is determined disabled (or not disabled) at any step, the inquiry proceeds no further. (20 C.F.R. § 404.1520.) In Clement's case, ALJ Breton determined that Clement was not disabled at step five. (R. at 16.)

The first step requires gauging Clement's work activity. (Id. at 6 (citing 20 C.F.R. § 404.1520).) ALJ Breton determined that Clement had not been engaged in "substantial gainful

---

[12] Haley also noted "Legal issues" (Id. at 255.)
[13] An impairment, or a combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities…." (20 C.F.R. § 404.1520(c).)
[14] Psychiatric progress note that appears to be dated July 1, 2008 (Id. at 407.); Psychiatric progress note dated March 12, 2009 (Id. at 409.); Psychiatric progress note dated May 4, 2009 (Id. at 410.); Psychiatric progress note dated August 12, 2009 (Id. at 297.); Psychiatric progress note dated November 11, 2009 (Id. at 374.); Psychiatric progress note dated January 27, 2010 (Id. at 373.)

activity"[15] since the alleged onset of her disability, thus the inquiry proceeded to the second step. (R. at 9-10.)

At the second step, ALJ Breton found that Clement had three severe impairments: "lumbar disorder, sinobronchitis/reactive airway disease, and affective and anxiety-related disorders (20 C.F.R. [§§] 404.1520(c) and 416.920(c))." (Id. at 10.)

Step three, like step two, contemplates the severity of the alleged impairment. (20 C.F.R. § 404.1520(a)(4)(iii).) ALJ Breton found that Clement's impairments did not meet or medically equal a listed[16] impairment and therefore proceeded to assess Clement's Residual Functional Capacity[17] ("RFC") before reaching step four. (R. at 11.)

ALJ Breton found that Clement had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with numerous exceptions: no "concentrated exposure to fumes, dust, smoke, chemicals or gases" (Id. at 11), noting that Clement is limited to "simple, routine, unskilled tasks which require limited concentration; working with things rather than people; and limited to work in the lower one-third of the stress continuum, defined as no decision-making required and no more than occasional changes in work routine." (Id.)

At the fourth step, the RFC is compared with the past relevant work to determine if the claimant is able to resume that work. (20 C.F.R. § 404.1520(a)(4)(iv).) If the claimant is able to resume past relevant work, she is determined to be not disabled. (Id.) If, conversely, the claimant is unable to resume past relevant work, the inquiry proceeds to the fifth step. (Id.) Vocational

---

[15] Defined by 20 C.F.R. § da rosa
 as work activity that is "both substantial and gainful."
[16] See 20 C.F.R. § 404(P)(App. 1)
[17] The determination of a claimant's residual functional capacity will be based on "all the relevant medical and other evidence in [claimant's] case record, as explained in [20 C.F.R. §] 404.1545." (20 C.F.R. § 404.1520(e).)

expert James T. Parker[18] ("Parker") was asked to evaluate Clement's past relevant work, age, education, and RFC. (Id. at 15-16.) Parker indicated that Clement's past work as a cab driver[19] had a medium exertion level, with a specific vocational profile of 3. (Id. at 222.) Her past work as a production helper[20] had a medium exertion level, with a specific vocational profile of 1. (Id.) And her past work as a personal care assistant[21] had a medium exertion level, with a specific vocational profile of 4. (Id.)

Parker, in response to ALJ Breton's vocational interrogatory, opined that Clement was unable to resume past relevant work because it was "medium [exertion level] work," and Clement[22] was only able to perform "light [exertion level work] with additional restrictions." (Id.) Adopting Parker's expert opinion, ALJ Breton found that Clement was unable to perform her past relevant work. (Id. at 15.)

At the fifth, and final, step the claimant's RFC, age, education, and work experience are considered to determine if she is capable of performing other work presently available in the national and regional economy. (20 C.F.R. § 404.1520(a)(4)(v).) If the claimant can make an adjustment to other work, and such other work is sufficiently available in the national and regional economy, the appropriate finding is 'not disabled.' (Id.)

Parker averred that a number of jobs in the national economy existed for someone fitting Clement's age, education, work experience, and RFC. (Id. at 224.) ALJ Breton noted that Parker indicated that, based on Clement's RFC, age, education, work experience, and specific

---

[18] Parker was present at the hearing before ALJ Breton, but did not provide oral testimony. (Id. at 18, 20.) Instead, Parker provided written testimony in response to a vocational interrogatory posed by ALJ Breton. (Id. at 16, 222, 225.)
[19] DOT # 913.463-018 (Id. at 15, 222.)
[20] DOT # 691.687-010 (Id. at 15, 222.)
[21] DOT # 355.674-014 (Id. at 15, 222.)
[22] Rhetorically represented by a hypothetical individual. (R. at 223.)

vocational profile, Clement was capable of performing "representative light, unskilled occupations." (Id. at 16.) ALJ Breton accepted Parker's assertion that Clement would be able to perform the job of laundry sorter,[23] price marker,[24] and inserter.[25] (Id. at 16, 224.)

## III.   Standard of Review

When reviewing a denial of SSDI and SSI benefits, the Court will uphold the ALJ's decision when it is supported by substantial evidence. 42 U.S.C. § 405(g); Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence exists, and the ALJ's findings must be upheld, if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).). The ALJ's conclusion must be upheld, when supported by substantial evidence, even if the record could "arguably justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Deciding upon issues of credibility is the "prime responsibility" of the ALJ. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The ALJ may rely on the opinions and findings of multiple physicians to ascertain the pertinent medical facts. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). §20 C.F.R. § 416.927(e)(1) vests the ALJ with the responsibility to draw the ultimate conclusion as to whether the applicant is disabled.

---

[23] DOT # 361.687-014; 377,000 such jobs in the national economy, and 325 such jobs in the central-western Massachusetts regional economy. (Id. at 16, 224.)
[24] DOT # 209.587-034; 160,000 such jobs in the national economy, and 200 such jobs in the central-western Massachusetts regional economy. (Id. at 16, 224.)
[25] DOT # 794.687-058; 500,000 such jobs in the national economy, and 250 such jobs in the central-western Massachusetts regional economy. (Id. at 16, 224.)

## IV.     Discussion

Clement's single argument for why this Court should reverse the Commissioner's decision is that ALJ Breton's conclusion as to the RFC is not supported by substantial evidence (dkt. no. 10). As discussed below, this Court concludes that the decision as to Clement's RFC is supported by substantial record evidence and should thus be sustained.

### A.     Physical Impairments

The findings as to Clement's physical impairments are supported by a detailed examination of the record. (R. at 12-14.) ALJ Breton found that Clement was suffering from numerous severe physical impairments. (Id. at 12.) ALJ Breton, however, also determined that the alleged intensity and incapacitating effect of those impairments was not supported by the medical record. (Id.) Most importantly, ALJ Breton points to the fact that "[n]o treating, examining or reviewing physician of record described specific work-related physical limitations that would preclude [Clement] from engaging in substantial gainful activity." (Id.) Clement testified before ALJ Breton that she only takes ibuprofen for her back pain and has not sought medical treatment[26] recently. (Id. at 27-28.) ALJ Breton's conclusion that the alleged intensity of the pain and degree of incapacity described by Clement are inconsistent with the medical evidence of record was a justifiable one. (Id.)

ALJ Breton's assessment of Clement's RFC clearly accommodates Clement's impairments by limiting her future work to light work, with no exposure to substances that could aggravate her sinobronchitis/reactive airway disease. (Id. at 13.)

---

[26] In her memorandum, Clement mentions undergoing physical therapy (dkt. no. 10) but fails to mention cancelling four out of six appointments. (R. at 230-235, 385.)

B.    Mental Health Impairments

ALJ Breton's findings with respect to Clement's mental health impairments relied on the reports of Jon Perlman, Ed.D., a reviewing DDS psychologist (Id. at 276-293), Joseph Litchman, Ph.D., another reviewing DDS psychologist (Id. at 350), and Margaret Stephenson, Ph.D. ("Stephenson"), an examining psychologist (Id. at 15, 259-261.) (Id. at 15.) ALJ Breton rightly points to the fact that "[n]o treating, examining or reviewing psychiatrist, psychologist or physician of record described specific work-related mental limitations that would preclude an ability to engage in substantial gainful activity" as strong support for the finding that Clement's mental health impairments do not render her disabled. (Id. at 14.) Dr. Perlman, for example, found only "moderate" or "mild" functional limitations as a result of Clement's psychiatric disorders. (Id. at 276-77, 290.) He specifically noted: "[Claimant] is able to understand and remember simple instructions" and "can sustain concentration for at least two hours in simple 1 and 2 step tasks." (Id. at 278.) Consistent with that opinion, Dr. Stephenson specifically noted that "Ms. Clement is capable of understanding and following directions, maintaining attention and concentration and making appropriate decisions." (Id. at 260.)

ALJ Breton noted that Clement's testimony at the hearing – namely, describing her inability to perform activities of daily life without heavy reliance on her boyfriend – was inconsistent with the evidence of record. (Id. at 14.) As mentioned above, assessments of credibility are the "prime responsibility" of the ALJ Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965), and in this instance, ALJ Breton determined that the discrepancies between Clement's testimony and the evidence on record "weaken [Clement's] credibility." (R. at 14.) The absence of any indication in the record that Clement was ever "hospitalized due to a mental impairment," combined with the consistent descriptions of "relatively mild to moderate signs and

10

symptoms" in the record, supports the finding that Clement's mental impairments have not limited her work-related activity. (Id.)

Clement's claim that ALJ Breton "appears to ignore" the impact her physical and mental health impairments would have on her "ability to perform in a work environment" (dkt. no. 10, at 11) is belied by ALJ Breton's finding that Clement is unable to perform past relevant work. ALJ Breton acknowledged the existence of severe impairments, and found that Clement's medically determinable impairments could reasonably cause the alleged symptoms. However, as is his prerogative, ALJ Breton found Clement's claims regarding the intensity, persistence and limiting effects of the alleged symptoms to be overstated and unsupported in the medical record. (R. at 12.) He adequately explained his credibility assessment.[27]

## V. Conclusion

For the foregoing reasons, the plaintiff's Motion to Reverse the Decision of the Commissioner (dkt. no. 9) is DENIED, and the defendant's Motion to Affirm the Commissioner's Decision (dkt. no. 13) is GRANTED. The decision is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[27] ALJ Breton properly concluded that Clement's claims were inconsistent with the objective medical evidence of record, and identified several instances in which Clement's self-reports prior to the hearing were inconsistent with her testimony at the hearing. (R. at 11-14.) Thus, ALJ Breton made the requisite specific findings as to the "relevant evidence he considered in determining to disbelieve [Clement]," and his credibility determination was supported by substantial record evidence. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986).